IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| RONALD BUZZARD, Jr., | ) | |
| | ) | No. 38930-8-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| INDETERMINATE SENTENCE | ) | UNPUBLISHED OPINION |
| REVIEW BOARD, et al., | ) | |
| | ) | |
| Respondent. | ) | |

STAAB, J. — Ronald Buzzard appeals the superior court's dismissal of his petition for a writ of mandamus to the Department of Corrections (DOC) and the Indeterminate Sentencing Review Board (ISRB). Because Buzzard has failed to show a mandatory duty to act on the part of either DOC or the ISRB, we affirm the dismissal of his writ.

BACKGROUND

Ronald Buzzard previously pleaded guilty to first degree rape of a child. He was sentenced to 123 months to life and released to community custody after about 12 years in prison. After violating his terms of community custody, Buzzard's release was revoked, and he was returned to DOC's custody to serve a new 24-month minimum term.

While serving his minimum term, the ISRB conducted a releasability hearing. During the hearing, the ISRB discussed Buzzard's "index offense" as well as his

subsequent violations. It also discussed Buzzard's activities while in prison, community concerns, and where he would live if released. Buzzard was given an opportunity to speak about a statement made by his counselor and discuss what he was currently doing and had previously done for his mental health. Additionally, Buzzard admitted to his index offense for the first time and addressed what he believed "went wrong" that resulted in him violating his terms of community custody.

The ISRB extended Buzzard's minimum term by 24 months. As part of its decision, it recommended Buzzard receive sex offender treatment, noting that he had not previously been eligible but likely now was due to his admission of his index offense. The End of Sentence Review Committee (ESRC) also recommended Buzzard's sex offender classification be increased from a level 1 to a level 3.

Following the ISRB's decision, Buzzard filed a writ of mandamus against the ISRB requesting that the superior court order his immediate release from custody. He argued that the ISRB did not have authority to order him to complete sex offender treatment a second time and the ESRC improperly raised his sex offender risk level from a level 1 to a level 3.

The ISRB and DOC together filed a motion to dismiss Buzzard's petition, arguing that Buzzard failed to establish a mandatory duty and he had a plain, speedy, and adequate remedy at law—a personal restraint petition. The superior court granted the motion and dismissed Buzzard's petition, finding Buzzard failed to establish a mandatory

duty and the ISRB's decisions were discretionary. The court did not make a finding regarding whether Buzzard had a plain, speedy, and adequate remedy at law.

Buzzard appeals.

ANALYSIS

Buzzard argues that the superior court erred in dismissing his petition for a writ of mandamus against the ISRB and DOC. We disagree. Buzzard has failed to show a mandatory duty and failed to show that his sex offender notification was raised improperly.

"A writ of mandamus is a rare and extraordinary remedy because it allows courts to command another branch of government to take a specific action, something the separation of powers typically forbids." *Colvin v. Inslee*, 195 Wn.2d 879, 890-91, 467 P.3d 953 (2020).

An applicant for a writ of mandamus must establish three elements for a writ to issue: "(1) the party subject to the writ is under a clear duty to act; (2) the applicant has no 'plain, speedy and adequate remedy in the ordinary course of law'; and (3) the applicant is 'beneficially interested.'" *Eugster v. City of Spokane*, 118 Wn. App. 383, 402, 76 P.3d 741 (2003) (citations omitted) (quoting RCW 7.16.170). The burden of establishing these elements is on the petitioner. *Colvin*, 195 Wn.2d at 894.

"A writ of mandamus can only command what the law itself commands." *Id.* at 893. Where there is no legal requirement for a government official to take a specific

action, a writ cannot require it. *Id*. As a result, "'mandamus may not be used to compel the performance of acts or duties which involve discretion on the part of a public official.'" *SEIU Healthcare 775NW v. Gregoire*, 168 Wn.2d 593, 599, 229 P.3d 774 (2010) (quoting *Walker v. Munro*, 124 Wn.2d 402, 410, 879 P.2d 920 (1994)).

Writs of mandamus are subject to different standards of review depending on the issue addressed. *Cost Mgmt. Servs., Inc. v. City of Lakewood*, 178 Wn.2d 635, 648, 310 P.3d 804 (2013). The question of whether the party to whom the writ is issued is under a clear duty to act is a question of law that is reviewed de novo. *Id*. at 649. But the question of whether there is a plain, speedy, and adequate remedy in the ordinary course of the law is a discretionary decision this court reviews for abuse of discretion. *Id*. This court reverses discretionary decisions only if they were manifestly unreasonable or exercised on untenable grounds or for untenable reasons. *Id*.

The superior court dismissed Buzzard's writ of mandamus based on a determination that Buzzard had failed to establish a clear duty to act on the part of either the ISRB or DOC. Buzzard was initially sentenced to an indeterminate sentence pursuant to RCW 9.94A.507, which provides for sentencing for certain sex offenders. Under RCW 9.95.420 and RCW 9.95.425, the ISRB had authority to determine whether Buzzard was releasable and whether to revoke his release when he violated his terms of community custody. *See also Matter of Forcha-Williams*, 200 Wn.2d 581, 593, 520 P.3d 939 (2022) ("[T]he authority to decide when a sex offender is released is vested with the

4

[ISRB].").  RCW 9.94A.507(5)-(6); RCW 9.95.420, .010, .011.  There is nothing in these statutes and Buzzard points to no authority indicating the ISRB had a mandatory duty to release Buzzard.

Buzzard also argues that the ISRB did not have authority to order him to complete sex offender treatment a second time.[1]  Regardless of whether the ISRB would have authority to order such treatment, there is no indication in the record that it did order such treatment.  Rather, the ISRB *recommended* Buzzard be rescreened for sex offender treatment.  Further, were Buzzard to submit to such treatment, there is no indication that this would be his second time completing it as the ISRB also explicitly stated that Buzzard had not previously been eligible for such treatment.[2]

---

[1] Although the ISRB claims that this argument and the argument regarding the ISRB's authority to raise his sex offender risk notification level from level 1 to level 3 are being raised for the first time on appeal, they were both mentioned in Buzzard's initial petition and so we address them.

[2] In his petition, Buzzard cites to exhibit 2 to support his contention that he had previously completed such treatment.  However, exhibit 2 simply contains a letter from Buzzard's counselor stating Buzzard had successfully completed his counseling obligation.  It does not support Buzzard's contention that he had previously completed sex offender treatment.

Buzzard additionally argues, for the first time on appeal, that WAC 381-90-090(3) was violated because he was not afforded his right to write a statement on his change of registration level.  This argument has not been properly preserved and we decline to address it.  *See* RAP 2.5(a).

Additionally, Buzzard claims that the ISRB improperly raised his sex offender notification level from a level 1 to a level 3. He claims that the ESRC had a mandatory duty, created by RCW 9.95.420(1)(a), (c), to permit him to participate in "actuarial testing" prior to determining his sex offender notification risk level and that he was not permitted to review the ESRC's report prior to his releasability hearing.

The statute requires the ESRC to, in certain situations as part of determining whether to release an offender, conduct an examination of the offender "incorporating methodologies that are recognized by experts in the prediction of sexual dangerousness, and including a prediction of the probability that the offender will engage in sex offenses if released." RCW 9.95.420(1)(a), (c). In this case, the record supports that such an examination and inquiry did occur at Buzzard's releasability hearing as the ISRB discussed several matters including a release plan, counseling on the record, and provided Buzzard with multiple opportunities to respond and participate. Assuming the ISRB was under a clear duty to act, Buzzard fails to demonstrate how it failed to comply with this duty.

Further, Washington law permits the ESRC to "[c]lassify the offender into a risk level for the purposes of public notification." RCW 72.09.345(5). Buzzard cites no statutory authority supporting his contention that this increase was improper or that the

6

ESRC was under a mandatory duty to keep his risk level at level 1. Accordingly, these arguments also fail.[3, 4]

The superior court did not err in dismissing Buzzard's petition for a writ of mandamus.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Staab, J.

WE CONCUR:

_____
Lawrence-Berrey, A.C.J.

_____
Pennell, J.

---

[3] Although the ISRB and DOC also argue that this court should affirm the dismissal of Buzzard's writ of mandamus because he had a plain, speedy, and adequate remedy at law, the superior court did not make any conclusions on this point.

[4] Buzzard also raises additional arguments including that the ISRB's actions violated his constitutional rights to due process, equal protection, a fair hearing, to present a defense, and protection from double jeopardy. He also challenges the evidence relied on by the ISRB and makes statements about witness bias and ER 401. However, none of these arguments explain how either the ISRB or DOC were under a clear duty to act. Accordingly, we decline to address these issues.